1 | Carey B. Moorehead (CA SBN 086479)
Email:  Carey.Moorehead@wilsonelser.com
2 | **WILSON, ELSER, MOSKOWITZ,**
   **EDELMAN & DICKER LLP**
3 | 555 South Flower Street, Suite 2900
Los Angeles, California 90071
4 | Telephone:(213) 453-5100
Facsimile: (213) 453-5101
5 |
6 | Stanley A. Calvert, Esq. (CA SBN 152981)
Email:  Stanley.Calvert@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,**
7 |    **EDELMAN & DICKER LLP**
655 West Broadway, Suite 900
8 | San Diego, California 92101
Telephone: (619) 321-6200
9 | Facsimile:  (619) 321-6201

10 | Attorneys for Plaintiff
COLONY INSURANCE CO.
11 |

12 |
13 |                UNITED STATES DISTRICT COURT
14 |              SOUTHERN DISTRICT OF CALIFORNIA

15 |
16 | COLONY INSURANCE COMPANY,    | Case No.  **'12CV0133 W    RBB**
   | a Virginia Corporation,
17 |                    *Plaintiff,*
18 |
19 | v.
20 | EPIFANY PROPERTIES, INC., a
California Corporation; RICHARD
21 | PATRICK ANTHONY ST. ROSE;
22 | STEVEN D. SHAW; MARK WOLLIN; | **COMPLAINT FOR DECLARATORY**
PAUL DENBOER; TODD DENBOER; | **RELIEF BY COLONY INSURANCE**
23 | FRANK VITALE; KARIM          | **COMPANY**
24 | ABDULLA; SHEHZAD
PEERMAHOMED;                 | **[REQUEST FOR JURY TRIAL]**
25 | MANEDECESSUS, INC.; GABRIEL
26 | ANDERSON; DYNASTY WEALTH,
LP.; GK ANDERSON, INC. a
27 | California Corporation; STEPHEN
28 | CHURCH, as TRUSTEE of the FRESH

COMPLAINT FOR DECLARATORY RELIEF
- 1 -

1452620.1

1  CATCH FISH CO. INC. PROFIT
2  SHARING PLAN; SCOTT A.
   BROWN; STACEY A. BROWN;
3  MIRIKITANI INTERNATIONAL
4  CAPITAL, LLC; KAHANA CAPITAL,
   INC.; and ROD LEE.
5
6                               *Defendants.*
7
8              **COMPLAINT FOR DECLARATORY JUDGMENT**
9
10        Plaintiff COLONY INSURANCE COMPANY (hereinafter "COLONY" or
11  "Plaintiff") by its attorneys, Wilson, Elser, Moskowitz, Edelman & Dicker LLP,
12  brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §2201 and
13  §2202 against Defendants, EPIFANY PROPERTIES, INC., a California
14  Corporation; RICHARD PATRICK ANTHONY ST. ROSE; STEVEN D. SHAW;
15  MARK WOLLIN; PAUL DENBOER; TODD DENBOER; FRANK VITALE;
16  KARIM ABDULLA; SHEHZAD PEERMAHOMED; MANEDECESSUS, INC.;
17  GABRIEL ANDERSON; DYNASTY WEALTH, LP; GK ANDERSON, INC. a
18  California Corporation; STEPHEN CHURCH as TRUSTEE of the FRESH
19  CATCH FISH CO. INC. PROFIT SHARING PLAN; SCOTT A. BROWN;
20  STACEY A. BROWN; MIRIKITANI INTERNATIONAL CAPITAL, LLC;
21  KAHANA CAPITAL, INC.; and ROD LEE (hereinafter collectively referred to as
22  "DEFENDANTS") to determine questions of an actual controversy concerning
23  the respective rights and obligations of COLONY and DEFENDANTS under a
24  Policy of insurance issued by COLONY.  COLONY alleges as follows upon
25  personal knowledge as to its own acts and status and upon information and belief
26  as to all other matters.
27  ///
28  ///

1452620.1

## PARTIES

### The Plaintiff

1.     Plaintiff COLONY is a corporation organized and existing under the laws of the State of Virginia, with its principal place of business in Virginia.

### The Insured Defendants

2.     Defendant EPIFANY PROPERTIES, INC. ("EPIFANY") is a California Corporation located and doing business in the County of San Diego, California.

3.     Defendant RICHARD PATRICK ANTHONY ST. ROSE ("ST. ROSE") is an individual residing in the County of San Diego, California and is the founder, sole owner and President of EPIFANY. EPIFANY and ST. ROSE are hereinafter referred to jointly as the "Insured Defendants."

### The Claimant Defendants

4.     Upon information and belief, Defendant STEVEN D. SHAW ("SHAW") is an individual residing in the County of San Diego, California and is a named Plaintiff in *Steven D. Shaw v. Epifany Properties, Inc. and Does 1-25,* Superior Court of California, County of San Diego, Case No. 37-2011-00088442-CV-BC-CTL (hereafter, the "*Shaw* Action").

5.     Upon information and belief, Defendant MARK WOLLIN ("WOLIN") is an individual residing in the State of Georgia and is a named Plaintiff in *Mark Wolgin, Paul Denboer and Tiddo Denboer v. Epifany Properties, Inc. and Does 1-50,* Superior Court of California, County of San Diego, Case No. 37-2011-00091019-CU-BC-CTL (hereinafter, the "*Wolgin* Action").

6.     Upon information and belief, Defendant PAUL DENBOER ("P. DENBOER") is an individual residing in the County of San Diego, California and is a named Plaintiff in the *Wolgin* Action.

7. Upon information and belief, Defendant TODD DENBOER ("T. DENBOER") is an individual residing in the County of San Diego, California and is a named Plaintiff in the *Wolgin* Action.

8. Upon information and belief, Defendant FRANK VITALE ("VITALE") is an individual residing in the County of San Diego, California and is a named Plaintiff in the *Wolgin* Action.

9. Upon information and belief, Defendant KARIM ABDULLA ("ABDULLA") is an individual residing in the County of San Diego, California and is a named Plaintiff in the *Wolgin* Action.

10. Upon information and belief, Defendant SHEHZAD PEERMAHOMED ("PEERMAHOMED") is an individual residing in the County of San Diego, California and is a named Plaintiff in the *Wolgin* Action.

11. Upon information and belief, Defendant MANEDECESSUS, INC. ("MANEDECESSUS") is a California Corporation and is a named Plaintiff in the *Wolgin* Action.

12. Upon information and belief, Defendant GABRIEL ANDERSON ("ANDERSON") is an individual residing in the County of Orange, California and is a named Plaintiff in the *Wolgin* Action.

13. Upon information and belief, Defendant DYNASTY WEALTH, LP ("DYNASTY") is a limited partnership organized under the laws of the State of California and is a named Plaintiff in the *Wolgin* Action.

14. Upon information and belief, Defendant GK ANDERSON, INC. ("GK ANDERSON") is a California corporation and is a named Plaintiff in the *Wolgin* Action.

15. Upon information and belief, Defendant STEPHEN CHURCH ("CHURCH") is a resident of New Zealand and is the Trustee of The Fresh Catch Fish Co. Inc. Profit Sharing Plan. CHURCH, in his capacity as Trustee, ("FRESH

CATCH") is the named Plaintiff in *Stephen Church as Trustee of Fresh Catch Fish Co., Inc. Profit Sharing Plan v. Epifany Properties, Inc. Richard P. A. St. Rose and Does 1-100,* Superior Court of California, County of San Diego, Case No. 37-2011-00099348-CU-CO-CTL (hereinafter, the *"Fresh Catch"* Action).

16.     Upon information and belief, Defendant SCOTT A. BROWN is an individual residing in the County of Riverside, California and is a named Plaintiff in *Scott A. Brown and Stacey A. Brown v. Epifany Properties, Inc. and Richard P. A. St. Rose and Does 1-20,* Superior Court of California, County of San Diego, Case No. 37-2011-00097618-CU-BC-CTL (hereinafter the *"Brown* Action").

17.     Upon information and belief, Defendant STACEY A. BROWN is an individual residing in the County of Riverside, California and is a named Plaintiff in the *Brown* Action. (hereinafter, SCOTT BROWN and STACEY BROWN are jointly referred to as "the BROWNS")

18.     Upon information and belief, Defendant KAHANA CAPITAL, INC. ("KAHANA") is a Nevada corporation and is a named Plaintiff in *Kahana Capital, Inc. and Rod Lee v. Epifany Properties, Inc. and Richard St. Rose; and Does 100,* Superior Court of California, County of San Diego, Case No. 37-2011-00096110-CU-CL-CTL (hereinafter the *"Kahana* Action").

19.     Upon information and belief, Defendant ROD LEE ("LEE") is an owner and officer of Defendant Kahana Capital, Inc. and, is a resident of the County of Santa Clara, California. LEE is a named Plaintiff in the *Kahana* Action.

20.     Upon     information     and     belief,     Defendant     MIRIKITANI INTERNATIONAL CAPITAL, LLC, ("MIRIKITANI") is a limited liability company organized under the laws of California with its principal offices located in   the County of San Diego, California and is a named Plaintiff in *Mirikitani International Capital, LLC v. Epifany Properties, Inc. and Richard Patrick Anthony St. Rose; Callisto, LLC;  MKA Property Holdings, LLC; Karim Abdulla;*

*John M. Larson; Lynn C. Larson; Europa, LLC; and Does 1-20,* Superior Court of California, County of San Diego, Case No. 37-2011-00097042-CU-FR-CTL (hereinafter, the *"Mirikitani* Action"). SHAW, WOLIN, P. DENBOER, T. DENBOER, VITALE, ABDULLA, PEERMAHAMED, MANEDECESSUS, ANDERSON, DYNASTY, GK ANDERSON, FRESH CATCH, THE BROWNS, KAHANA, LEE and MIRIKITANI are hereinafter referred to collectively as either the "Claimant Defendants" or "Underlying Plaintiffs", depending upon the context.

## JURISDICTION AND VENUE

21. The Court has jurisdiction over this controversy pursuant to 28 U.S.C. §1332 as there is complete diversity of citizenship between the parties. COLONY is a Virginia corporation with its principal place of business in Virginia. DEFENDANTS are residents of California, Nevada, Georgia or New Zealand. Further, DEFENDANTS are seeking indemnity and defense costs from COLONY of more than $1.4 million, which amount is far in excess of the maximum $1 million limits of liability available under the Policy of Insurance at issue. Thus, the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

22. Venue is proper in this Court pursuant to 28 U.S.C. §1391 given that, upon information and belief, some of the DEFENDANTS are residents of this District and a substantial part of the events giving rise to the claims at issue occurred in this District.

## FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS

### The Underlying Litigations

23. EPIFANY is located in San Diego California, and describes itself as a provider of "Real Estate Investment Consulting and Portfolio Management"

services.   EPIFANY's principal is ST. ROSE. On information and belief, EPIFANY has ceased operations in the face of the multiple Underlying Litigations.

24.   To date, EPIFANY and/or ST. ROSE have been named as defendants in at least six civil actions filed in the San Diego Superior Court arising out of EPIFANY's alleged real estate syndication activities and default on numerous promissory notes totaling $1,463,712.40.

/ / /

25.   The pleadings in the Underlying Litigations allege generally that EPIFANY was engaged in the marketing of a series of real estate investments in various multi-unit rental properties which were structured as real estate syndications, pursuant to which investors were to acquire and hold interests either as tenants in common or as members of limited liability companies.  Some of the Underlying Plaintiffs allege that EPIFANY engaged in a scheme to market these investments through the use of negligent and/or intentional written and oral misrepresentations of material facts.  Generally, the Underlying Plaintiffs allege that they entered into buyer representation agreements with EPIFANY and "invested" in the subject property pursuant to a Syndication Agreement.   In exchange, EPIFANY gave the Underlying Plaintiffs one or more unsecured Promissory Notes, agreeing to return the principal, plus interest, when escrow on the property closed or was cancelled.  Subsequently, ST. ROSE allegedly advised the Underlying Plaintiffs that the various transactions had been cancelled and that EPIFANY had lost all of the money it had invested, including apparently, all of the monies that EPIFANY had borrowed from the Underlying Plaintiffs.  In some cases, ST. ROSE allegedly invited the Underlying Plaintiffs to participate in a replacement deal on similar terms as a way of recovering their lost investment.  In all cases, EPIFANY is alleged to have defaulted on the Promissory Notes.  On

information and belief, the claims against EPIFANY and/or ST. ROSE include, but are not limited to, the following matters (hereinafter, collectively, the "Underlying Litigations"):

26.   ***Steven D. Shaw v. Epifany Properties, Inc. and Does 1-25,*** Superior Court of California, County of San Diego, Case No. 37-2011-00088442-CV-BC-CTL, filed March 28, 2011, alleging causes of action for Breach of Contract, Unjust Enrichment, Conversion and Claim and Delivery.   SHAW alleges that on or about January 20, 2010 he entered into a written contract with EPIFANY "regarding the purchase of a rental property." The complaint alleges that pursuant to the contract, on or about January 20, 2010, EPIFANY gave SHAW a written promissory note in the amount of $300,000 and SHAW gave EPIFANY the sum of $300,000.   Under the terms of the agreement, defendant EPIFANY agreed to return said $300,000 plus interest at the rate of 2% per annum, at such time as either the property closed escrow or the escrow was cancelled.   The property escrow was cancelled shortly thereafter, but EPIFANY refused to return said funds to SHAW, despite repeated demands.

27.   On September 11, 2011 SHAW filed a First Amended Complaint ("Shaw FAC"), which adds ST. ROSE as a defendant and adds both new facts and causes of action.   A true and correct copy of the Shaw FAC is attached as Exhibit "A."   The Shaw FAC alleges that EPIFANY was engaged in the marketing of a series of real estate investments in various multi-unit rental properties which were structured as real estate syndications pursuant to which the investors would acquire and hold interests either as tenants in common or as members of limited liability companies.   SHAW alleges that EPIFANY engaged in a scheme to market these investments through the use of negligent and/or intentional written and oral misrepresentations of material facts.

28.     SHAW alleges that he entered into a buyer representation agreement with EPIFANY and invested $300,000 in real property identified as 7481-7487 Mohawk St., La Mesa, CA 92142. (the "Mohawk Property") pursuant to a Syndication Agreement.   In exchange, on January 20, 2010 EPIFANY gave SHAW an unsecured Promissory Note agreeing to return the $300,000, plus interest at the rate of 2% per annum, when the Mohawk Property escrow closed or was cancelled.   On November 15, 2010 ST. ROSE allegedly advised SHAW that the Mohawk transaction had been cancelled and that EPIFANY had lost all of the money it had invested. The Shaw FAC seeks recovery of general damages in the sum of $300,000 plus interest, an accounting, attorney's fees and costs.

29.     *Mark Wolgin, Paul DenBoer and Tiddo DenBoer v. Epifany Properties, Inc. and Does 1-50,* Superior Court of California, County of San Diego, Case No. 37-2011-00091019-CU-BC-CTL"), filed May 10, 2011, alleging causes of action for Breach of Note and Common Count / Money Had and Received arising out of EPIFANY's alleged default on four promissory notes totaling $388,209.44 in connection with EPIFANY's purchase of the following three properties:

1.      a 78 unit apartment complex, located at 7481-7487 Mohawk Street in La Mesa, California (the "Mohawk Property");

2.      real property located at 735-795 W. Fallbrook, California, 92028 (the "Fallbrook Property"); and

3.      real property located at 617-621 61st St. San Diego, California, 92114 (the "61st St. Property").

The loans were made pursuant to four unsecured promissory notes.   All three transactions were cancelled and the notes were not repaid.

30.   On July 19, 2011 the Plaintiffs served a First Amended Complaint ("Wolgin FAC") styled **Mark Wolgin, Paul DenBoer, Tiddo DenBoer, Frank Vitale, Karim Abdulla, Shehzad Peermahomed, Manedecessus, Inc., Gabriel Anderson, Dynasty Wealth, LP and GK Anderson, Inc. v. Epifany Properties, Inc., Richard St. Rose and Does 1-50**, bringing suit on behalf of an expanded group of investors in EPIFANY's real estate syndicates and alleging causes of action for Breach of Fiduciary Duty, Negligence, Fraud, Negligent Misrepresentation, Accounting, California Securities Fraud Violations, Violation of California's Unfair Practices Act, Breach of Promissory Notes and Common Counts. A true and correct copy of the Wolgin FAC is attached as Exhibit "B."

31.   The Wolgin FAC alleges generally that "Commencing in late 2007 and continuing through Summer 2010, defendants Epifany [and] St. Rose...engaged in a scheme to sell a series of real estate investments in multi-unit rental properties in the county of San Diego to plaintiffs...through the use of negligent and/or intentional written and oral misrepresentations and omissions of material fact" and that the "...subject real estate investments were in some instances structured ...as real estate 'syndications'" under which "investors ...would acquire and hold the subject rental properties as 'tenants-in-common' under 'Real Estate Investment Syndication Agreements' and 'Tenancy-in-Common' agreements. In other instances, the subject real estate investments were structured ...as real estate 'syndications' under which investors, including plaintiffs...would acquire interests in limited liability companies which would acquire and hold the subject rental properties under 'Real Estate Investment Syndication Agreements' and limited liability company operating agreements" The Wolgin FAC alleges that Epifany defaulted on four promissory notes totaling $388,209.44.

32.     ***Stephen Church as Trustee of Fresh Catch Fish Co., Inc. Profit Sharing Plan v. Epifany Properties, Inc. Richard P. A. St. Rose and Does 1-100,*** Superior Court of California, County of San Diego, Case No. 37-2011-00099348-CU-CO-CTL, filed October 13, 2011, alleging causes of action for Negligence and Breach of Contract.  A true and correct copy of the Fresh Catch Complaint is attached as Exhibit "C."

33.     FRESH CATCH alleges that on June 15, 2010 it entered into a Real Estate Agency Relationship Agreement in which EPIFANY agreed to act as FRESH CATCH's "Buyer's Agent" for the purchase of real property.  FRESH CATCH also entered into a "Real Estate Syndication Agreement" with EPIFANY Properties, Inc., as "Sponsor" pursuant to which FRESH CATCH agreed to invest one hundred fifty thousand dollars ($150,000.00).  In addition, on or about June 15, 2010 FRESH CATCH entered into a "Buyer Representation Agreement – Exclusive" with EPIFANY for the purchase of 7481-7487 Mohawk St., La Mesa, CA  91942) as well as a Property Management Agreement for the same property.

34.     In exchange for its payment of $150,000, FRESH CATCH received an unsecured Promissory Note from EPIFANY, bearing interest at the rate of 2% per annum and payable at the time of closing or cancellation of escrow for the purchase of the Mohawk Property.

35.     FRESH CATCH alleges that EPIFANY failed to acquire the Mohawk property and failed to repay the note.  FRESH CATCH agreed to accept two replacement notes dated December 8 and 22, 2010 in the amounts of $73,258.01 and $78,073.50, respectively.  These replacement notes were to bear interest at the rate of five percent per annum, and to be payable in full on April 1 and February 28, 2010, respectively.  EPIFANY allegedly failed to repay either of the replacement notes.

1452620.1

36.     *Scott A. Brown and Stacey A. Brown v. Epifany Properties, Inc. and Richard P. A. St. Rose and Does 1-20,* Superior Court of California, County of San Diego, Case No. 37-2011-00097618-CU-BC-CTL, filed September 8, 2011, alleging causes of action for Breach of Contract, Breach of Fiduciary Duty, Intentional Misrepresentation, Negligent Misrepresentation, Breach of the Implied Covenant of Good Faith and Fair Dealing and Breach of Promissory Note. A true and correct copy of the Brown Complaint is attached as Exhibit "D."

37.     The BROWNS allege that on or about April 2010 they were approached by EPIFANY and ST. ROSE about a potential real estate investment in the 78 unit Mohawk Property located in La Mesa, California.

38.     EPIFANY represented to the BROWNS that it was a real estate brokerage company representing buyers wishing to purchase real estate property. EPIFANY represented that it would "provide all of the services that a buyer required in purchasing the Mohawk Property as a tenant in common with other purchasers, including investment analysis, buyer's representation, project management, sales and syndication." EPIFANY also allegedly represented that "acting as Plaintiffs [sic] broker of record, they would secure financing for the purchase of the Mohawk Property, and represent them [the Browns] in all aspects of the purchase."

39.     EPIFANY provided the BROWNS with a "prospectus" that "outlined various aspects of the Mohawk Property including the annual property operating data, a cash flow analysis, alternative cash sales, rental analysis, assumptions and internal rates of return." EPIFANY represented that the "minimum purchase for a portion of the Mohawk Property was $150,000 and that the guaranteed cash return was 15% per year, paid in monthly installments over a two-year holding period."

40.     On April 19, 2010 the BROWNS entered into a "Real Estate Syndication Agreement" with EPIFANY as "Sponsor," pursuant to which the

BROWNS agreed to invest one hundred fifty thousand dollars ($150,000.00) and agreed to pay commissions of seven thousand three hundred dollars and thirty-four cents ($7,300.34) towards a "total syndicated investment" of $1,610,068.00.

41.    On or abut April 19, 2010, EPIFANY and the BROWNS entered into an "Addendum to the Real Estate Syndicated Investment Agreement" wherein EPIFANY agreed to pay the BROWNS a guaranteed 15% annual return for two years, in lieu of cash returns, if any, that would actually be generated by the funds invested in the Syndicate. EPIFANY allegedly failed to repay the note.

42.    *Mirikitani International Capital, LLC v. Epifany Properties, Inc. and Richard Patrick Anthony St. Rose; Callisto, LLC; MKA Property Holdings, LLC; Karim Abdulla; John M. Larson; Lynn C. Larson; Europa, LLC; and Does 1-20,* Superior Court of California, County of San Diego, Case No. 37-2011-00097042-CU-FR-CTL, filed August 29, 2011, alleging causes of action for Breach of Fiduciary Duty, Conversion, Money Had and Received, Fraud and Deceit (Negligent Misrepresentation); Fraud and Deceit (Intentional Misrepresentation); Fraud and Deceit (Promissory Fraud); Breach of Contract; Breach of the Covenant of Good Faith and Fair Dealing, Rescission – Adams Agreement; Rescission – Primrose Agreement; Fraudulent Conveyance; Accounting; Rescission (Corporations Code §§ 25210 and 25501.50); and Constructive Trust.   A true and correct copy of the Mirikitani Complaint is attached as Exhibit "E."

43.    MIRIKITANI alleges that on or about March 15, 2010 it paid EPIFANY $210,000 and was given two promissory notes in the amounts of $60,000 and $150,000.  It is alleged that "on or about November 29, 2010, [MIRIKITANI] and ST. ROSE and EPIFANY agreed to invest approximately $65,000.00 of [Mirikitani's] money in EPIFANY's purchase of the real property located at 2212 Primrose Avenue, Vista, California 92083 (the 'Primrose

Property')." Moreover, "on or about February 24, 2011, ST. ROSE and EPIFANY agreed to invest approximately $147,248.08 of [Mirikitani's] money in EPIFANY's purchase of the real property located at 3701 Adams Avenue, San Diego, California 92116 (the 'Adams Property')."

44. With respect to both the Adams and Primrose properties, MIRIKITANI alleges that it entered into a "Real Estate Investment Syndication Agreement" with EPIFANY Properties, Inc., and an "Addendum to Real Estate Investment Syndication Agreement" (wherein EPIFANY agreed to pay MIRIKITANI a guaranteed 15% annual return for two years, in lieu of cash returns, if any, that would actually be generated by the funds invested in the Syndicate).

45. MIRIKITANI alleges that EPIFANY did not invest MIRIKITANI's monies in the purchase of the two properties and that EPIFANY never purchased the Primrose Property and never had any ownership interest in the Adams Property. MIRIKITANI also alleges that EPIFANY fraudulently conveyed to the other named defendants the money that it was to invest on MIRIKITANI's behalf. MIRIKITANI alleges that EPIFANY failed to pay the two notes.

46. *Kahana Capital, Inc. and Rod Lee v. Epifany Properties, Inc. and Richard St. Rose; and Does 100*, Superior Court of California, County of San Diego, Case No. 37-2011-00096110-CU-CL-CTL, filed August 10, 2011. On August 14, 2011, KAHANA filed its First Amended Complaint ("Kahana FAC"), alleging causes of action on Promissory Note; Common Counts; Conversion; Breach of Fiduciary Duty; and Fraud and Deceit. A true and correct copy of the Kahana FAC is attached as Exhibit "F."

47. KAHANA alleges that on October 8, 2009 it executed a Real Estate Investment Syndication Agreement with EPIFANY and on October 8, 2009 deposited $256,666.38 with EPIFANY to be invested in the Fallbrook Property

located at 735-795 W. Fallbrook Street, Fallbrook, California. EPIFANY allegedly represented that the funds would be held in escrow and only used to purchase the property on KAHANA's behalf.  In exchange, KAHANA received an unsecured promissory note. KAHANA alleges that escrow for the Fallbrook Property was cancelled on or about November 20, 2009 and that the property was never purchased.   When escrow for the Fallbrook property was cancelled, EPIFANY persuaded KAHANA to invest its monies in the Mohawk Property, another of EPIFANY's syndications.   Escrow on the Mohawk Property was cancelled on November 20, 2009 and EPIFANY never acquired it.

48.    Following cancellation of the Mohawk escrow, LEE advised ST. ROSE that he wanted KAHANA's money returned. ST. ROSE allegedly responded that EPIFANY was "low on cash" and that returning KAHANA's investment would spark a "run on the bank" that EPIFANY could not cover. ST. ROSE offered KAHANA his "personal guarantee" of repayment of the note, representing that he had personal assets worth millions of dollars.  Thereafter, on December 15, 2010, EPIFANY and KAHANA entered into a Real Estate Investment Syndication Agreement with respect to a third, unidentified property, which was set to close escrow by March 1, 2011.  The Kahana FAC alleges that escrow of the property never closed and that the loan was not repaid.

49.    As a result of the Underlying Litigations, the Insured Defendants face known claims of at least $1,463,712.40, exclusive of interest, as summarized in the following table:

/ / /

/ / /

/ / /

/ / /

1452620.1

| CLAIMANT | PROPERTY | NOTE AMOUNT |
|---|---|---|
| Shaw | Mohawk | $300,000.00 |
| Wolgin | Mohawk | $150,321.44 |
| Wolgin | 61st St. | $80,000.00 |
| T DenBoer | Fallbrook | $78,500.00 |
| P DenBoer | Fallbrook | $78,500.00 |
| Fresh Catch | Mohawk | $150,000.00 |
| Brown | Mohawk / 49th St. | $157,300.34 |
| Mirikitani | Primrose | $65,000.00 |
| Mirikitani | Adams | $147,424.24 |
| Kahana | Fallbrook | $256,666.38 |
| **TOTAL** | | $1,463,712.40 |

### The Policy and Coverage Disputes

50.    Actual controversies have arisen and now exist between COLONY and the Defendants relative to their respective rights and duties with respect to the availability of coverage for claims made by the Claimant Defendants against the Insured Defendants.

51.    COLONY issued to EPIFANY its Real Estate Professional Liability Policy, Number EO404299, for claims first made and reported to COLONY during the Policy Period 10/10/2010 to 10/10/2011 (the "Policy").  The Policy provides liability limits of $1 million each occurrence and $1 million aggregate limits, subject to a $10,000 deductible, each Claim.  A true and correct copy of the Policy is attached hereto as Exhibit "G."   Subject to various exclusions and limitations, the Policy provides coverage for "Claims" for "Damages" that are first made against an "Insured" and reported to COLONY during the Policy Period.

52.    The Insured Defendants have sought insurance coverage in connection with the Underlying Litigations.  COLONY disputes that it has any duty or obligation under the Policy to either defend or indemnity EPIFANY

1452620.1

and/or ST. ROSE with respect to the Underlying Litigations and has accepted coverage subject to a full reservation of rights.

53.   The Policy Insuring Agreement provides, in pertinent part:

SECTION 1 – COVERAGES

1.   Insuring Agreement

a.   We will pay, in excess of the Deductible shown in the Declarations, those sums any insured becomes legally obligated to pay as "damages" because of an actual or alleged:

(1)   Act, error or omission; or

(2)   Offense resulting in "personal injury";

arising out of your "professional services" rendered or that should have been rendered and to which this insurance applies.

c.   This insurance applies to "claims" for "damages" only if all of the following conditions are met:. . .

(1)   Prior to the effective date of this Policy, no insured had knowledge of any 'claim' or any act, error, omission or offense that could reasonably give rise to a 'claim' under this Policy;

* * *

(3)   The "damages" arise out of an act, error, omission, or offense in the conduct of the insured's "professional services";

(4)   The "professional services" forming the basis of the "claim" were rendered subsequent to the Policy's effective date or Retroactive Date, if applicable, and prior to the expiration of this Policy;…

1452620.1

(5)     The 'claim' is first made against you subsequent to this Policy's effective date and prior to the expiration date of this Policy…

(6)     The 'claim' is first reported to us subsequent to this Policy's effective date and prior to the expiration date of this Policy…"

54.     The Policy at Section VII-Definitions, defines "Claim" to mean, in pertinent part:

a.     A demand for monetary "damages" arising out of a "professional service" including allegations of offenses of "personal injury" committed in the rendering of or failure to render a "professional service," made against the insured by service of suit, the institution of arbitration or administrative procedures or otherwise; but does not include a demand for equitable or non-pecuniary relief. . .

55.     The Policy at Section VII-Definitions, defines "Damages" to mean, in pertinent part:

"Damages" means judgments, awards and settlements an insured is legally obligated to pay as a result of a 'claim' to which this Policy applies.

/ / /

/ / /

/ / /

/ / /

/ / /

## COUNT 1

### NO COVERAGE FOR THE UNDERLYING LITIGATIONS BECAUSE THEY DO NOT ALLEGE ACTS, ERRORS OR OMISSIONS CONSTITUTING "PROFESSIONAL SERVICES"

#### (Declaratory Relief as Against Mirikitani and Kahana)

56.    Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

57.    Insuring Agreement 1a. of the Policy provides that the Policy will pay "damages" because of an actual or alleged: (1) Act, error or omission; . . . arising out of your "professional services" rendered or that should have been rendered and to which this insurance applies."   Similarly, the definition of "Claim" is limited to demands for "professional services."

58.    Pursuant to the Professional Services Endorsement, the definition of "Professional Services" is amended to read as follows:

> 9.    "Professional services" means solely those services performed by an insured for others as a:
> Real estate broker, real estate agent, real estate salesperson, real estate personal assistant, real estate independent contractor, auctioneer of real property, or notary public; Real estate leasing agent or property manager;

59.    The Mirikitani and Kahana Actions do not allege that the Claimants retained EPIFANY and/or its principal, ST. ROSE, to represent them as a real estate agent and broker in the purchase of real property.   Nor do they allege that the Insured was to act as their leasing agent and/or property manager.   Rather, the Mirikitani and Kahana Actions allege only that MIRIKITANI and KAHANA each independently loaned EPIFANY sums of money evidenced by separate unsecured Promissory Notes and that EPIFANY has failed to repay the loans.   Based on the

1452620.1

express allegations of the Complaints, the Mirikitani and Kahana Actions do not allege any "Act, error or omission; . . . arising out of [EPIFANY's] 'professional services' rendered or that should have been rendered and to which this insurance applies." Thus, the allegations of the Mirikitani and Kahana Actions do not come within the Policy's Insuring Agreement and, as a consequence, the Policy does not provide coverage for the matters alleged in the Mirikitani and Kahana Actions.

## COUNT 2

## NO COVERAGE FOR THE UNDERLYING LITIGATIONS BECAUSE THEY DO NOT ALLEGE ACTS, ERRORS OR OMISSIONS CONSTITUTING "PROFESSIONAL SERVICES"

### (Declaratory Relief as Against All Defendants)

60.     Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

61.     All of the Underlying Plaintiffs allege that they each independently loaned EPIFANY sums of money, evidenced by separate unsecured Promissory Notes, and that EPIFANY failed to repay the loans.   EPIFANY's alleged acceptance of loans from the Underlying Plaintiffs does not constitute Professional Services as defined by the Policy.   Based on the express allegations of the complaints and currently known facts, the Underlying Litigations, insofar as they pertain to EPIFANY's alleged acceptance and failure to repay loans, do not allege any "Act, error or omission; . . . arising out of [Epifany's] 'professional services' rendered or that should have been rendered and to which this insurance applies."   As a consequence, the Policy does not provide coverage for any of the Underlying Litigations.

/ / /

/ / /

/ / /

1452620.1

## COUNT 3

## NO COVERAGE FOR THE UNDERLYING LITIGATIONS BECAUSE POLICY EXCLUSION 2.b.(2) APPLIES

### (Declaratory Relief as Against All Defendants)

62.   Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

63.   COLONY and the Insured Defendants dispute the application of Policy Exclusion 2b.(2), which provides that COLONY shall not be liable to make any payment for damages in connection with any Claim based upon or arising out of the inability or failure to pay or collect money held or to be held for others. The Insured Defendants contend that this exclusion does not bar coverage for the Underlying Litigations.

64.   The Policy contains the following exclusion from coverage:

> 2.   Exclusions
>
> This Policy does not apply to any "claim":
>
> b.   Based upon or arising out of:…
>
>> (2)   The inability or failure to pay or collect money held or to be held for others;

65.   Each of the Underlying Litigations alleges that EPIFANY accepted monies from the Underlying Plaintiffs which it was to hold for the purpose of investing in various real estate syndications and to return said monies to the Underlying Plaintiffs upon the closing or cancellation of certain specified escrows.   Each of the Underlying Plaintiffs alleges further that they received Promissory Notes from EPIFANY and that EPIFANY both failed to invest the funds and has defaulted on the Promissory Notes.

1452620.1

66.    EPIFANY's failure to repay loans secured by promissory notes comes directly within Exclusion 2.b.(2) and, as a consequence, the Policy does not provide coverage for the Underlying Litigations.

## COUNT 4

## NO COVERAGE FOR THE UNDERLYING LITIGATIONS BECAUSE POLICY EXCLUSION 2.e.(2) APPLIES

### (Declaratory Relief as Against All Defendants)

67.    Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

68.    COLONY and the Insured Defendants dispute the application of Policy Exclusion 2e.(2), which provides that COLONY shall not be liable to make any payment for damages in connection with any Claim based upon or arising out of private placement of private securities, limited partnerships, syndicates of any kind or real estate investment trusts.  The Insured Defendants contend that this exclusion does not bar coverage for the Underlying Litigations.

69.    The Policy contains the following exclusion from coverage:

2.    Exclusions

This Policy does not apply to any "claim":

e.    Based upon or arising out of:…

(2)    Private placement of private securities, limited partnerships, syndicates of any kind or real estate investment trusts…

70.    Each of the Underlying Litigations allege that the Underlying Plaintiffs were engaged in real estate syndications sponsored by EPIFANY and ST. ROSE and that in connection with the syndications they paid monies to

EPIFANY to purchase interests in various multi-unit rental properties which were structured as real estate syndications, pursuant to which the investors were to acquire and hold interests either as tenants in common or as members of limited liability companies. Some of the Underlying Plaintiffs allege that these real estate interests were actually unregistered securities.

71.     The alleged conduct of EPIFANY and ST. ROSE falls squarely within the scope of exclusion 2.e.(2) and, as a consequence, the Policy does not provide coverage for the Underlying Litigations.

## COUNT 5

## NO COVERAGE FOR THE UNDERLYING LITIGATIONS BECAUSE POLICY EXCLUSION 2.i. APPLIES

72.     Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

73.     COLONY and the Insured Defendants dispute the application of Policy Exclusion 2.i. which provides that COLONY shall not be liable to make any payment for damages in connection with any Claim based upon or arising out of conspiracy, intentional breach of contract, intentional interference with rights or obligation.   The Insured Defendants contend that this exclusion does not bar coverage for the Underlying Litigations.

74.     The Policy contains the following exclusion from coverage:

2.     Exclusions

This Policy does not apply to any "claim":

i.     Based upon or arising out of conspiracy, intentional breach of contract, intentional interference with rights or obligations, assault, battery or trespass.

75.    The Underlying Litigations allege that the Underlying Plaintiffs were engaged in real estate syndications sponsored by EPIFANY and ST. ROSE and that in connection with the syndications they paid monies to EPIFANY to purchase interests in various multi-unit rental properties which were structured as real estate syndications, pursuant to which the investors were to acquire and hold interests either as tenants in common or as members of limited liability companies.

76.    The Underlying Litigations allege various forms of intentional, criminal, fraudulent and/or dishonest conduct on the part of EPIFANY and ST. ROSE with respect to the real estate syndications, including, *inter alia*, the misrepresentation, omission and concealment of material fact regarding the purported syndications and subject properties; intentional commingling of investment funds; knowingly offering for sale unregistered securities; obtaining Plaintiffs' investments under false pretenses, without intending to either invest those monies or return them to the Underlying Plaintiffs.

77.    The alleged conduct of EPIFANY and ST. ROSE falls squarely within the scope of exclusion 2.i. and, as a consequence, the Policy does not provide coverage for the Underlying Litigations.

## COUNT 6

## NO COVERAGE FOR THE UNDERLYING LITIGATIONS BECAUSE POLICY EXCLUSIONS 2.j.(1) & (2) APPLY

78.    Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

79.    COLONY and the Insured Defendants dispute the application of Policy Exclusions 2.j.(1) & (2) which provide that COLONY shall not be liable to make any payment for damages in connection with any Claim based upon or arising out of any criminal, fraudulent or dishonest act, omission or offense or any

act, omission or offense committed with knowledge of its wrongful nature or with the intent to cause damage.  The Insured Defendants contend that this exclusion does not bar coverage for the Underlying Litigations.

80.    The Policy contains the following exclusions from coverage:

This Policy does not apply to any "claim":

j.    Based upon or arising out of: :

(1)    Any criminal, fraudulent, or dishonest act, omission or offense; however, we shall defend any allegations concerning (1) above, against any insured if such allegations involve a "claim" to which this insurance otherwise applies until a judgment or other final adjudication establishes, or if such insured admits, that such act, omission or offense was committed, or personally acquiesced, in, by such insured;

(2)    Any act, omission or offense committed with knowledge of its wrongful nature or with the intent to cause damage;

81.    The Underlying Litigations allege various forms of intentional, criminal, fraudulent and/or dishonest conduct on the part of EPIFANY and ST. ROSE with respect to the real estate syndications, including, *inter alia*, the misrepresentation, omission and concealment of material fact regarding the purported syndications and subject properties; intentional commingling of investment funds; knowingly offering for sale unregistered securities; obtaining Plaintiffs' investments under false pretenses, without intending to either invest those monies or return them to the Underlying Plaintiffs.

82.    The alleged conduct of EPIFANY and ST. ROSE falls squarely within the scope of exclusions 2.j (1) & (2) and, as a consequence, the Policy does not provide coverage for the Underlying Litigations.

/ / /

# COUNT 7

## NO COVERAGE FOR THE UNDERLYING LITIGATIONS BECAUSE POLICY EXCLUSION 2.j.(3) APPLIES

83.   Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

84.   COLONY and the Insured Defendants dispute the application of Policy Exclusion 2.j.(3), which provides that COLONY shall not be liable to make any payment for damages in connection with any Claim based upon or arising out of the gaining by any insured of any personal profit, gain or advantage to which the insured is not legally entitled.   The Insured Defendants contend that this exclusion does not bar coverage for the Underlying Litigations.

85.   The Policy contains the following exclusion from coverage:

This Policy does not apply to any "claim":

j.      Based upon or arising out of: :

      (3)   The gaining by any insured of any personal profit, gain or advantage to which the insured is not legally entitled...

86.   The Underlying Litigations allege *inter alia*, that EPIFANY and ST. ROSE obtained Plaintiffs' investments under false pretenses, without intending to either invest those monies or return them to the Underlying Plaintiffs and have failed to repay all of the amounts allegedly paid to EPIFANY and subject to various Promissory Notes.

87.   The alleged conduct of EPIFANY and ST. ROSE falls squarely within the scope of exclusion 2.j.(3) and, as a consequence, the Policy does not provide coverage for the Underlying Litigations.

/ / /

1452620.1

## COUNT 8

## NO COVERAGE FOR THE UNDERLYING LITIGATIONS BECAUSE POLICY EXCLUSION 2. r. APPLIES

### (Declaratory Relief as Against All Defendants)

88.    Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

89.    COLONY and the Insured Defendants dispute the application of Policy Exclusion 2.r., which provides that COLONY shall not be liable to make any payment for damages in connection with any Claim based upon or arising out of the commingling, conversion, misappropriation or defalcation of funds or other property, or the inability or failure to pay, collect, disburse or safeguard any funds held by the insured.  The Insured Defendants contend that this exclusion does not bar coverage for the Underlying Litigations.

90.    The Policy contains the following exclusion from coverage:

This Policy does not apply to any "claim":

r.    Based upon or arising out of the commingling, conversion, misappropriate [sic] or defalcation of funds or other property, or the inability or failure to pay, collect, disburse or safeguard any funds held by the insured;

91.    The Underlying Litigations allege that EPIFANY accepted monies from the Underlying Plaintiffs which it was to hold for the purpose of investing in various real estate syndications and to return said monies to the Underlying Plaintiffs upon the closing or cancellation of escrows.  Each of the Underlying Plaintiffs allege further that EPIFANY and/or ST. ROSE commingled, converted,

misappropriated and/or defalcated said monies, to the Underlying Plaintiffs' injury and damage.

92.    The alleged conduct of EPIFANY and ST. ROSE falls squarely within the scope of exclusion 2.r. and, as a consequence, the Policy does not provide coverage for the Underlying Litigations.

## COUNT 9

## NO COVERAGE FOR THE UNDERLYING LITIGATIONS BECAUSE POLICY EXCLUSION 2.u.(1) APPLIES

### (Declaratory Relief as Against All Defendants)

93.    Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

94.    COLONY and the Insured Defendants dispute the application of Policy Exclusion 2.u.(1), which provides that COLONY shall not be liable to make any payment for damages in connection with any Claim based upon or arising out of any insured's liability under any oral or written contract, agreement, guaranty, warranty, promise or representation including any rights and duties under any agreement.  The Insured Defendants contend that this exclusion does not bar coverage for the Underlying Litigations.

95.    The Policy contains the following exclusion from coverage:
2.    Exclusions

This Policy does not apply to any "claim":

u.    Based upon or arising out of:

(1)    Any insured's liability under any oral or written contract, agreement, guaranty, warranty, promise or representation including any rights and duties

under any agreement; however this exclusion u. (1) does not apply to liability for "damages" that the insured would have in the absence of such contract or agreement...

96. The Underlying Litigations allege that EPIFANY has defaulted under numerous written promissory notes. Liability for EPIFANY's failure to pay these notes is excluded by Exclusion 2.u.(1) as a claim based upon or arising out of an "...insured's liability under any ... written contract, agreement, guaranty, warranty, promise..." and, as a consequence, the Policy does not provide coverage for the Underlying Litigations.

## COUNT 10

## NO COVERAGE FOR THE KAHANA ACTION BECAUSE POLICY EXCLUSION 2.u.(2) APPLIES

### (Declaratory Relief as Against All Defendants)

97. Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

98. COLONY and the Insured Defendants dispute the application of Policy Exclusion 2.u.(2) which provides that COLONY shall not be liable to make any payment for damages in connection with any Claim based upon or arising out of the liability of others assumed by an insured. The Insured Defendants contend that this exclusion does not bar coverage for the Underlying Litigations.

99. The Policy contains the following exclusion from coverage:

2. Exclusions

This Policy does not apply to any "claim":

u. Based upon or arising out of:

---

1452620.1

(2)   Any liability of others any insured assumes under any oral or written contract or agreement...

100.   The Kahana Action alleges that following the cancellation of the Mohawk escrow ST. ROSE gave KAHANA his "personal guarantee" to repay the note if KAHANA would agree to switch its $256,666. 38 investment from the Mohawk property to an unidentified property.

101.   ST. ROSE's alleged personal guarantee of the Kahana note falls directly within Policy Exclusion 2.u.(2) and, as a consequence, the Policy does not provide coverage for the Kahana Action to the extent that it is based upon ST. ROSE'S personal guarantee.

## COUNT 11

## NO COVERAGE FOR THE UNDERLYING LITIGATIONS BECAUSE POLICY EXCLUSION 2.v. APPLIES

### (Declaratory Relief as Against All Defendants)

102.   Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

103.   COLONY and the Insured Defendants dispute the application of Policy Exclusion 2.v., which provides that COLONY shall not be liable to make any payment for damages in connection with any Claim based upon or arising out of the rights or duties under any agreement including disputes over fees for services.   The Insured Defendants contend that this exclusion does not bar coverage for the Underlying Litigations.

104.   The Policy contains the following exclusion from coverage:

2.   Exclusions

This Policy does not apply to any "claim":

---

v.  Based upon or arising out of the rights or duties under any agreement including disputes over fees for services.

105.  The Underlying Plaintiffs allege that they entered into buyer representation and related agreements with EPIFANY and "invested" in the subject properties pursuant to Syndication Agreements.  In exchange, EPIFANY gave the Underlying Plaintiffs one or more unsecured Promissory Notes, agreeing to return the principal, plus interest, when escrow on the property closed or was cancelled.  The Underlying Plaintiffs allege further that EPIFANY and ST. ROSE breached these agreements and defaulted on the Promissory Notes.

106.  The alleged conduct of EPIFANY and ST. ROSE falls squarely within the scope of exclusion 2.v. and, as a consequence, the Policy does not provide coverage for the Underlying Litigations.

## COUNT 12

### NO COVERAGE FOR THE UNDERLYING LITIGATIONS BECAUSE THEY DO NOT SEEK "DAMAGES" AS DEFINED BY THE POLICY

### (Declaratory Relief as Against All Defendants)

107.  Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

108.  The relief currently sought by the Underlying Plaintiffs does not constitute Damages recoverable under the Policy.  In pertinent part, the Policy defines "Damages" to mean:

> 2.  "Damages" means judgments, awards and settlements an insured is legally obligated to pay as a result of a "claim" *to which this Policy applies*. [Emphasis added]

109.  The Underlying Plaintiffs seek EPIFANY's payment of the notes which are in default.  The theories for recovery asserted include, *inter alia*: breach of contract, coverage for which is excluded by Exclusion 2.u.(1) and Exclusion

2.i.   Thus, damages awarded for a breach of contract can not result from a claim "to which this Policy applies":

110.   One may not insure against the risk of being ordered to return money or property that has been wrongfully acquired.  Therefore, disgorgement does not constitute insurable damages.  See: *Bank of the West v. Superior Court*, (1992) 2 Cal. 4th 1254, 1266.

111.   Because the relief currently sought by the Underlying Plaintiffs does not constitute Damages recoverable under the Policy, the Policy does not provide coverage for the Underlying Litigations.

## COUNT 13

### NO COVERAGE FOR THE WOLGIN, DENBOER AND KAHANA CLAIMS BECAUSE THE CLAIMS WERE FIRST MADE PRIOR TO INCEPTION OF THE POLICY

### (Declaratory Relief as Against All Defendants)

112.   Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

113.   The Policy provides, in pertinent part, that "[T]his insurance applies to "claims" for "damages" only if all of the following conditions are met:  (5) The "claim" is first made against you subsequent to this Policy's effective date and prior to the expiration date of this Policy…(6) The "claim" is first reported to us subsequent to this Policy's effective date and prior to the expiration date of this Policy…"   The Policy at Section VII-Definitions, defines "Claim" to mean, in pertinent part:

a.   A demand for monetary "damages" arising out of a "professional service" including allegations of offenses of "personal injury" committed in the rendering of or failure to render a "professional service," made against the insured by service of suit, the

institution of arbitration or administrative procedures or otherwise; but does not include a demand for equitable or non-pecuniary relief. . .

114.  Claimant Wolgin has testified that the escrow for the 61st Street Property was cancelled on or about September 13, 2010, which predates inception of the Policy on October 10, 2010.  Plaintiff is informed and believes that Claimant Wolgin demanded payment of this note on or about September 13, 2010, which demand predated the Policy, and constitutes a Claim made prior to the Policy Period.  COLONY has reserved its rights and seeks a declaration of non-coverage on the basis that the Claim regarding the August 23, 2010 note for $80,000 was made prior to inception of the Policy and would therefore not be covered.

115.  The *Wolgin* Action alleges that escrow for the Fallbrook property was cancelled on November 20, 2009, which predates inception of the Policy on October 10, 2010.  Plaintiff is informed and believes that P. DenBoer and T. DenBoer demanded payment of their notes on or about November 20, 2009, which demands predated the Policy, and constitute a Claim or Claims made prior to the Policy Period.  COLONY has reserved its rights and seeks a declaration of non-coverage on the basis that the P. DenBoer Claim regarding the September 30, 2009 note for $78,500.00 and the T. DenBoer Claim regarding the September 24, 2009 note for $78,500.00 were made prior to inception of the Policy and would therefore not be covered.

116.  The *Kahana* Action alleges that escrow for the Fallbrook property was cancelled on November 20, 2009, which predates inception of the Policy on October 10, 2010.  Plaintiff is informed and believes that Kahana demanded payment of its note on or about November 20, 2009, which demand predated the Policy, and constitutes a Claim or Claims made prior to the Policy Period. COLONY has reserved its rights and seeks a declaration of non-coverage on the

basis that the Kahana Claim regarding the October 8, 2001 note for $256,666.38 was made prior to inception of the Policy and would therefore not be covered.

## COUNT 14

### NO COVERAGE FOR THE UNDERLYING LITIGATIONS BECAUSE ALL CLAIMS ARE DEEMED TO HAVE BEEN FIRST MADE PRIOR TO INCEPTION OF THE POLICY

**(Declaratory Relief as Against All Defendants)**

117. Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

118. Section I – Coverages, subparagraph 1d. provides in pertinent part that

"'…For the purposes of this insurance, all acts, errors, omissions or offenses that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision, regardless of the number of acts, errors, omissions or offenses, insureds, or claimants, *will be considered to be one act, error, omission or offense* and *will be deemed to have taken place at the time the first of these related acts, errors, omissions or offenses took place. All "claims" based upon such logically or causally connected acts, errors, omissions or offenses shall be deemed to constitute a single "claim"* and shall be subjected to a single Deductible and the amount stated in the Declarations as Limit Of Insurance – Each Claim, as applicable." [Emphasis Added]

119. Each of the Underlying Litigations allege that EPIFANY accepted monies from the Underlying Plaintiffs which it was to hold for the purchase of investing in various real estate syndications and to return said monies to the Underlying Plaintiffs upon the closing or cancellation of escrows. Each of the

Underlying Plaintiffs alleges further that they received Promissory Notes from EPIFANY and that EPIFANY failed both to invest the funds and has defaulted on the Promissory Notes.   Each of the Underlying Plaintiffs allege further that EPIFANY and/or ST. ROSE commingled, converted, misappropriated and/or defalcated said monies, to the Underlying Plaintiffs' injury and damage.

120.   Each of the Underlying Litigations alleges acts, errors, omissions or offenses that are logically or causally connected by common facts, circumstances, situations, transactions, events, advice or decisions and therefore under the terms of the Policy the Underlying Litigations constitute *"one act, error, omission or offense* and *will be deemed to have taken place at the time the first of these related acts, errors, omissions or offenses took place."*

121.   The Wolgin demand for payment pertaining to the 61st Street Property and the DenBoer and Kahana demands for payment pertaining to the Mohawk Property are Claims first made prior to inception of the Policy and therefore are not covered under the Policy.   Pursuant to Section I of the Policy,– Coverages, subparagraph 1d., all of the Underlying Litigations constitute a single claim that was first made prior to inception of the Policy and therefore are not covered.   COLONY seeks a declaration that the Policy does not provide coverage for the Underlying Litigations by reason that they are Claims first made before the Policy incepted.

## COUNT 15

## NO DUTY TO DEFEND

### (Declaratory Relief as Against All Defendants)

122.   Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

123.   The Policy Insuring Agreements provide, in pertinent part:

SECTION 1 – COVERAGES

1.     Insuring Agreement

b.     We will have the right and duty to defend the insured against a "claim" seeking those "damages". However, we will have no duty to defend the insured against any "claim" seeking "damages" for "professional services" to which this insurance does not apply. . . .

124.   The allegations of the Underlying Litigations that EPIFANY failed to repay unsecured loans to the Underlying Plaintiffs do not seek relief even potentially within the coverage of the Policy because there are no allegations that the Insured provided any Professional Services to the Underlying Plaintiffs.

125.   Because there is no potential for coverage with respect to any of the Underlying Litigations, COLONY has no duty by reason of the Policy to provide the Insured Defendants with a defense to the Underlying Litigations. COLONY is providing Epifany and Mr. St. Rose with a defense to the Underlying Litigations subject to a full reservation of its rights, including a right pursuant to *Buss v. Superior Court* (1997) 16 Cal.4th 35, 50 to seek reimbursement of a legal fees and costs incurred in defending Claims not potentially covered under the Policy. COLONY has also reserved the right to withdraw from the defense and to recover from the Insured Defendants any defense fees and costs COLONY may have advanced, in the event of a determination that there was no potential for coverage under the Policy.

## COUNT 16

### RECOVERY OF DEDUCTIBLE ADVANCED

### (Declaratory Relief as Against Epifany and St. Rose)

126.   Plaintiff hereby incorporates by this reference each and every allegation of the preceding paragraphs as though fully set forth here.

1452620.1

127.   Epifany asserts that it is insolvent, has ceased doing business and does not have the ability to pay the balance of its $10,000.00 Deductible, each Claim.   On information and belief, Epifany has paid $2,026.25 towards unspecified Claims.

128.   The Policy states that the Deductible is to be paid by the Insured, but that COLONY may advance payment.

"…We may advance payment of all or part of the Deductible. Within thirty (30) days of our request, you shall reimburse us for the Deductible amount we have advanced.   The Limits of Liability will not be reduced by the amount of any 'damages' within the Deductible Amount.

129.   COLONY has agreed to advance payment of the Deductible on Epifany's behalf and to advance certain filing fees within the Deductible. COLONY has reserved its right under the Policy to demand reimbursement from Epifany of all such amounts advanced on Epifany's behalf.

## PRAYER

**WHEREFORE,** Plaintiff requests that the Court enter judgment in its favor and against Defendants as follows:

### First Count

1.   A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover the claims made in either the Mirikatani or Kahana Actions because the claims do not allege damages arising out of Professional Services by any Insured.

### Second Count

2.   A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover any of the claims made against any

1452620.1

Insured Defendant with respect to the Underlying Litigations because the claims do not allege damages arising out of Professional Services by any Insured.

### Third Count

3.      A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover any of the claims made against any Insured Defendant due to Policy Exclusion 2.b.(2).

### Fourth Count

4.      A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover any of the claims made against any Insured Defendant due to Policy Exclusion 2.e.(2).

### Fifth Count

5.      A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover any of the claims made against any Insured Defendant due to Policy Exclusion 2.i.

### Sixth Count

6.      A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover any of the claims made against any Insured Defendant due to Policy Exclusion 2.j.(1) & (2).

### Seventh Count

7.      A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover any of the claims made against any Insured Defendant due to Policy Exclusion 2.j.(3).

### Eighth Count

8.      A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover any of the claims made against any Insured Defendant due to Policy Exclusion 2.r.

///

### Ninth Count

9.     A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover any of the claims made against any Insured Defendant due to Policy Exclusion 2.u.(1).

### Tenth Count

10.     A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover any of the claims made against any Insured Defendant due to Policy Exclusion 2.u.(2).

### Eleventh Count

11.     A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover any of the claims made against any Insured Defendant due to Policy Exclusion 2.v.

### Twelfth Count

12.     A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover any of the claims made against any Insured Defendant because the relief sought in the Underlying Litigations does not constitute "damages" under the Policy.

### Thirteenth Count

13.     A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover any of the claims made against any Insured with respect to the Wolgin, DenBoer and/or Kahana promissory notes because those Claims were first made prior to inception of the Policy.

### Fourteenth Count

14.     A Declaration that COLONY Real Estate Professional Liability Policy, Number EO404299 does not cover any of the claims made against any Insured Defendants because the Underlying Litigations are deemed to be a single Claim that was first made prior to inception of the Policy.

1452620.1

**Fifteenth Count**

15.    A Declaration that COLONY has no duty to defend the Insured Defendants with respect to the Underlying Litigations because there is no potential for coverage under the Policy for those legal actions. COLONY seeks a further Declaration that it may recover from the Insured Defendants all legal fees and costs incurred in defending Claims and/or causes of action not potentially covered under the Policy, pursuant to *Buss v. Superior Court.*

**Sixteenth Count**

16.    A Declaration that COLONY is entitled to recover from EPIFANY and ST. ROSE all payments of the Deductible that COLONY has advanced on behalf of the Insureds.

**As To In Causes Of Action**

17.    That COLONY be awarded costs and reasonable attorney fees to be determined by the Court; and

18.    For such other and further relief as the Court may deem just and proper.

DATED: January *13*, 2012

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

Carey B. Moorehead
Stanley A. Calvert
Attorneys for Plaintiff
COLONY INSURANCE COMPANY

1452620.1

1

## REQUEST FOR JURY TRIAL

2
 Plaintiff requests a jury trial in order to adjudicate matters that are within

3
the province of the jury.

4

5
DATED: January *13*, 2012   WILSON, ELSER, MOSKOWITZ,
           EDELMAN & DICKER LLP

6

7

8
           Carey B. Moorehead

9
           Stanley A. Calvert
           Attorneys for Plaintiff

10
           COLONY INSURANCE COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY RELIEF

- 41 -

1452620.1